**R.H. DAMON & CO., INC., Damon D. Testaverde, Ronald I. Heller and Donald M. Kleban, Plaintiffs,**

v.

**SOFTKEY SOFTWARE PRODUCTS, INC., James Anthony and Michael Perik, Defendants.**

No. 92 Civ. 1943 (KTD).

United States District Court, S.D. New York.

Feb. 4, 1993.

Parker Chapin Flattau & Klimpl, New York City, for plaintiffs (Elliot Cohen, Stephen G. Rinehart, and Elyse Dranoff Kovar, of counsel).

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant Softkey Software Products, Inc. (Jay B. Kasner, Joseph Gulielmelli, and H. Eugene Lindsey, of counsel).

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants Michael Perik and James Anthony (Thomas A. Leghorn, of counsel).

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs R.H. Damon & Co. ("Damon"), Damon D. Testaverde, Ronald I. Heller, and Donald Kleban commenced this action on March 18, 1992, against defendants Softkey Software Products, Inc. ("Softkey"), Michael Perik and James Anthony. On May 7, 1992, defendants moved to dismiss the complaint pursuant to Fed. R.Civ.P. 9(b), 12(b)(1) and 12(b)(6). Defendants also moved pursuant to Fed.R.Civ.P. 12(f) for an order striking the plaintiffs' demand for punitive damages.

## I. BACKGROUND

### A. *Scope of Review*

When reviewing a motion to dismiss I am required to take the allegations contained in the complaint as true. As a preliminary matter, however, it should be noted that when, on a 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judg-

ment." Fed.R.Civ.Proc. 12(b). Generally, when deciding a 12(b)(6) motion, courts may not consider documents that the plaintiffs have neither attached to nor incorporated by reference in the complaint. An exception to this aspect of Rule 12(b) has developed, however, for documents submitted by defendants in connection with a 12(b)(6) motion where: (1) plaintiffs have undisputed notice of the contents of such documents; and (2) such documents are integral to the plaintiffs' claim. *See Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

■ In support of the instant motion to dismiss, defendants have attached, as exhibits to their notice of motion, copies of two documents (the "Warrant Agreement" and the "Option Agreement"). While these documents were neither attached to the complaint nor expressly incorporated therein by reference,[1] defendants urge that I consider the Warrant Agreement and the Option Agreement under the aforementioned exception to Rule 12(b) in reviewing the validity of the complaint.

■ It appears that the documents at issue fit squarely within the exception to Rule 12(b). Plaintiffs' complaint contains repeated references to both documents. In fact, it is from these two documents that this entire controversy springs. Thus, I must conclude that the documents were integral to the plaintiffs' claims. Additionally, it is incontrovertible that the plaintiffs' had notice of the contents of the documents, as they were signatories to both. Thus, I shall, under the exception announced in *Cortec,* consider the Warrant Agreement and the Option Agreement in conjunction with my review of the complaint's sufficiency. Nevertheless, I am still required to take the allegations contained in the complaint as true.

## B. *Alleged Facts*

On or about May 20, 1992, Damon, a New York corporation, and Softkey, a Canadian corporation, allegedly executed the Warrant Agreement whereby Softkey engaged Damon to act as their financial advisor. Compl. ¶ 12. The plaintiffs assert that the Warrant Agreement entitled Damon, or its designees, to 5–year warrants to purchase 150,000 restricted common shares of Softkey stock, at $2.35 (Canadian) per share, as compensation for services rendered. *Id.* at ¶ 13; Warrant Agreement at ¶ 3. The Warrant Agreement further provided that warrants to purchase an additional 150,000 shares, under the same terms and conditions, would issue if the Warrant Agreement remained in full force and effect on December 1, 1990. Compl. ¶ 13. Damon allegedly designated 111,000 warrants to Heller, 51,000 to Testaverde and 36,000 to Kleban, while retaining 102,000. *Id.* at ¶ 16.

In or about July of 1990, the parties executed the Option Agreement, dated for reference May 4, 1990, whereby Softkey granted Damon options to purchase 150,000 shares of Softkey's capital stock at $2.35 (Canadian) per share in consideration for Damon's services. *Id.* at ¶ 27; Option Agreement at ¶ 1. During negotiation of the Option Agreement defendants Anthony and Perik, acting on behalf of Softkey, supposedly represented to plaintiff, Kleban, acting on behalf of Damon, that the Option Agreement would provide options to Damon on the same terms as the warrants granted pursuant to the Warrant Agree-

---

1. The law regarding the incorporation of documents into complaints by reference is quite nebulous. It appears that documents have the innate ability to, at a certain point, become mystically "incorporated" into a complaint. Mere discussion or limited quotation of a document in a complaint does not qualify for incorporation. *See Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989); *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985). Incorporation occurs, however, when the complaint refers to a docu-

ment, the terms of which are undisputed, and a memorandum of law opposing a motion to dismiss the same complaint quotes the document in its entirety. *National Assoc. of Pharmaceutical Mfrs. v. Ayerst Laboratories,* 850 F.2d 904, 910 n. 3 (2d Cir.1988).

The complaint in the instant case uses limited quotations from the documents at issue, yet it refers to them with vigor. Absent clarity on the issue, however, I find that the complaint does not incorporate the documents by reference.

ment. Compl. at ¶ 47. Damon assertedly believed the options would remain exercisable for five years and that they would become entitled to options to purchase an additional 150,000 shares of Softkey's capital stock on December 1, 1990 should the Option Agreement remain in effect until that date. Damon allegedly designated 111,000 optioned shares to Heller, 51,000 to Testaverde and 36,000 to Kleban, while retaining 102,000. *Id.* at ¶ 30. Plaintiffs further assert that, by letter dated July 31, 1990, Softkey agreed that, upon plaintiffs' exercise of 75,000 options, Softkey would grant plaintiffs an additional 75,000 options at the then market value. *Id.* at ¶ 31.

By letter dated January 2, 1991, Softkey allegedly terminated Damon effective retroactively to November 30, 1990. *Id.* at ¶ 53. Plaintiffs further allege that by letter dated August 13, 1991 Softkey refused to honor plaintiffs' options to purchase stock claiming that the exercise thereof violated both the terms of the Option Agreement and the rules of the Toronto Stock Exchange ("TSE"). *Id.* at ¶ 54. Fifteen months after notification of termination by Softkey, on or about March 18, 1992, plaintiffs filed the instant action alleging that Softkey acted improperly when it rescinded the warrants and/or options granted to Damon under the Warrant Agreement and Option Agreement.

### C. *Plaintiffs' Claims*

Plaintiffs' complaint sets forth eleven claims: (1) for a declaratory judgement determining the rights and obligations of the parties under the Warrant Agreement; (2) for breach of the Warrant Agreement and money damages against Softkey; (3) for specific performance of the Warrant Agreement by Softkey; (4) for a declaratory judgement determining the rights and obligations of the parties under the Option Agreement; (5) for breach of the Option Agreement and money damages against Softkey; (6) for specific performance of the Option Agreement by Softkey; (7) against all defendants for violation of § 10(b) of the Securities Exchange Act of 1934 (the "'34 Act") and Rule 10b–5 promulgated thereunder; (8) against Perik and Anthony

for liability under § 20(a) of the '34 Act; (9) against all defendants for common law fraud; (10) against all defendants for negligent misrepresentation; and, (11) against Softkey for reformation.

### II. DISCUSSION

#### A. *Motion to Dismiss*

Defendants now move, pursuant to Fed. R.Civ.P. 12(b)(1), 12(b)(6), and 9(b), to dismiss the complaint and Fed.R.Civ.P. 12(f) to strike plaintiff's request for punitive damages. On a motion to dismiss, I must read the complaint in the light most favorable to the nonmovant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Additionally, I cannot dismiss the complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984).

#### B. *The Breach of Contract Claims*

The defendants set forth a number arguments in favor of dismissing all of the plaintiffs' contract claims. Initially, the defendants argue that their obligation under the Warrant Agreement is unenforceable as a matter of law. Specifically, the defendants contend that the rules and regulations of the TSE, which bind Canadian companies listed thereon, prohibit compliance with the Warrant Agreement because any proposed issuance of warrants to purchase shares must first be accepted by the TSE. Defendants' Memorandum at 32–33. In other words, the defendants are attempting to invoke the protection of certain rules and regulations they ignored at the time they voluntarily entered into the Warrant Agreement with the plaintiffs. The defendants, however, bore the burden of securing the TSE's approval of the Warrant Agreement. Their failure to do so cannot provide them with a defense to a breach of contract claim.

Defendants further argue that I should dismiss the contract claims because the plaintiffs have failed to allege an essential element of a breach of contract claim. To adequately state a claim for breach of contract a plaintiff must allege: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach. *See Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 561 (S.D.N.Y.1985). The defendants argue that the plaintiffs have failed to state a claim for breach of contract because they did not allege due performance.

■ It is not necessary, however, for a complaint alleging breach of contract to specifically state each element individually. *See Id.; See also Posner v. Minnesota Mining & Manufacturing Co., Inc.*, 713 F.Supp. 562, 63 (E.D.N.Y.1989). To satisfy Rule 8 of the Federal Rules of Civil Procedure a "short and plain statement of the claim" will generally suffice, as the purpose of the rule is to put the defendants on notice of the claims against them. Rule 8 applies to actions arising on a contract. Nevertheless, when pleading a claim for the breach of an express contract, as in the instant case, the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract. *See* 2A Moore's Federal Practice ¶ 8.17[7] (2d ed. 1992).

In the instant case, plaintiffs mischaracterize the issue by framing their argument in terms of conditions precedent. Plaintiffs' Memo at 51. The plaintiffs claim that upon the execution of the Option Agreement they became entitled to the first 150,000 options. They contend that said execution satisfied a condition precedent to defendants performance. Plaintiffs similarly argue that the arrival of December 1, 1990, without the termination of the Option Agreement, was all that was required for their entitlement to the second 150,000 options. Plaintiff also makes these arguments with regard to the Warrant Agreement.

The plain language of the Option Agreement, however, states that the options were granted "in consideration for their services." Option Agreement at ¶ 1. Similarly, and notwithstanding the fact that there exists an issue as to whether the Option Agreement supersedes the Warrant Agreement, the Warrant Agreement expressly provides that the warrants were granted as compensation for services. Warrant Agreement at ¶ 3. Thus, the defendants simply granted the options and warrants as a manner of payment in contemplation of services rendered.

■ Accordingly, the issue is not whether any particular conditions precedent were satisfied, but whether the plaintiffs actually rendered services so as to require compensation. As such, to properly state a cause of action for breach of a personal services contract the complaint must allege due performance. In the instant case, plaintiffs have failed to make such an allegation. All of the breach of contract claims, therefore, including those claims for declaratory judgment, specific performance and reformation, are dismissed for failure to allege due performance.

## C. '34 Act Claims

■ Plaintiffs' seventh claim alleges that the defendants violated § 10(b) of the '34 Act and Rule 10b–5 promulgated thereunder. Specifically, plaintiffs contend that defendants defrauded them through misrepresentations regarding the terms and validity of the Option Agreement. Compl. ¶ 55.

A complaint states a cause of action under § 10(b) and Rule 10b–5 when the following elements are met: (1) damage to plaintiffs, (2) caused by their reliance on the defendants' misrepresentations or omissions of material facts, or on a scheme or artifice of the defendants to defraud, (3) made with scienter, (4) furthered by the use of the mails, interstate commerce or any national securities exchange, and (5) in connection with the purchase or sale of a security. *See Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015 (2d Cir.1989).

Defendants argue that plaintiffs' allegations do not implicate the '34 Act because they did not make any misrepresentations or omissions "in connection with" the purchase or sale of a security. I must agree with the defendants.

Plaintiffs argue, however, that because the alleged misrepresentations pertain to the value of the options, the fraud occurred "in connection with" the purchase or sale of a security. In support of this contention, plaintiffs call my attention to *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555 (2d Cir.1985). In *Yoder*, the defendant fraudulently induced the plaintiff to convey the assets of her company to him in exchange for his paying her debts, keeping her on as a salaried employee, and issuing to her a maximum of 30,000 shares of his company's stock, where such issuance was to be based on profits generated by the acquisition of her company. *Id.* at 556. The misrepresentations, which provided the basis for Yoder's 10b–5 action, pertained to the assets, liabilities and earnings of the defendant's company. *Id.* at 556. As such, the misrepresentations went directly to the value of the security that Yoder would have gotten if the contract had been fully performed.

Unlike the plaintiff in *Yoder*, however, the plaintiffs here do not allege that the defendants misrepresented the assets, liabilities or earnings of Softkey. In the instant case, the alleged misrepresentations pertain to the conditions under which the defendants would compensate the plaintiffs for their services. As such, plaintiffs do not allege a misrepresentation as to the value of a security. Without such misrepresentations plaintiffs cannot satisfy the "in connection with" language of § 10(b) and Rule 10b–5. While it is possible that defendants alleged misrepresentations pertain to plaintiffs' compensation in connection with their services, these facts certainly do not implicate the '34 Act. Accordingly, the plaintiffs' seventh claim for violation of § 10(b) and Rule 10b–5 is dismissed with prejudice. Additionally, plaintiffs' eighth claim for liability against named defendants Anthony and Perik under § 20(a) of the '34 Act is dismissed with prejudice because plaintiffs have failed to establish the requisite primary violation of the '34 Act.

### D. Common Law Fraud and Negligent Misrepresentation

Plaintiffs' ninth and tenth claims, for common law fraud and negligent misrepresentation, respectively, venture to cross the oft blurred line that separates tort from contract. As a general rule, New York courts preclude such actions where the "only fraud charged relates to a breach of contract." *Miller v. Volk & Huxley Inc., et al.*, 44 A.D.2d 810, 810, 355 N.Y.S.2d 605, 606–07 (1st Dep't 1974); *see Metropolitan Transportation Authority v. Triumph Advertising Productions, Inc.*, 116 A.D.2d 526, 527, 497 N.Y.S.2d 673, 675 (1st Dep't 1986). Such a relationship exists where the fraud claims do not allege facts extraneous and collateral to the contract. *See Mastropieri v. Solmar Construction Co.*, 159 A.D.2d 698, 700, 553 N.Y.S.2d 187, 189 (2d Dep't 1990).

To determine whether the fraud claims allege facts extraneous and collateral to the contract, courts should look to the source of the damages alleged. Thus, where a fraud claim seeks to enforce no more then the breached promises and obligations of a contract, rather than additional damages incurred as a result of the breach, the claims are merely redundant and must be dismissed. *See Tesoro Petroleum Corporation v. Holborn Oil Company Ltd.*, 108 A.D.2d 607, 607, 484 N.Y.S.2d 834, 835 (1st Dep't 1985). To defeat a motion to dismiss common law fraud and misrepresentation claims, therefore, a plaintiff must allege that they sustained damages in addition to those they could have anticipated in the event of a breach. *Id.*

In the instant case, plaintiffs have made no allegations that the alleged misrepresentations caused them any injury for which a breach of contract claim would not provide complete recovery. Plaintiffs' common law claims seek only the compensation they would have received had defendants per-

formed the contract as expected. *Compare* Compl. ¶¶ 74 and 80 *with* Compl. ¶¶ 22 and 37. Thus, plaintiffs have not alleged any facts extraneous and collateral to the breach of contract claim. As such, plaintiffs claims for common law fraud and negligent misrepresentation are dismissed with prejudice as redundant to the contract claims.[2]

### E. *Punitive Damages*

Plaintiffs claim entitlement to punitive damages based on the common law fraud count. *Id.* at ¶ 75. As I have already dismissed the common law fraud claim, defendants' motion to dismiss the demand for punitive damages is granted. Nevertheless, had I not dismissed the common law fraud count plaintiffs' demand would warrant dismissal for failure to allege that the fraud was perpetrated on the public or that it manifested a gross and wanton departure from the moral norms of society. *See e.g.*, my opinion in, *Rosenberg v. GWV Travel, Inc.*, 480 F.Supp. 95, 97 (S.D.N.Y. 1979) (New York law permits the recovery of punitive damages only where the conduct complained of either affects the public generally or involves a gross departure from moral behavior). *See* Compl. at ¶ 75.

For the foregoing reasons, this motion to dismiss is granted in its entirety, with leave to replead the contract claims within twenty (20) days hereof. All other claims are dismissed with prejudice. It is expected, however, that such repleading will evoke a motion pursuant to Rule 56, and possibly Rule 11 of the Federal Rules of Civil Procedure.

SO ORDERED.

---

**2.** Plaintiffs argue that because the fraud claims named all defendants and the contract claims named only Softkey the fraud claims against Perik and Anthony cannot be redundant to the contract claims. This assertion, however, is un-supported by New York case law. *See Metropolitan Transportation Authority v. Triumph Advertising Productions, Inc.*, 116 A.D.2d 526, 497 N.Y.S.2d 673 (1st Dep't 1986).