The REUBEN H. DONNELLEY CORPORATION, Plaintiff,

v.

MARK I MARKETING CORPORATION, Mark I Marketing Corporation of America, and Wallace Edwards, Defendants.

No. 94 Civ. 6756 (WCC).

United States District Court, S.D. New York.

July 28, 1995.

Willkie Farr & Gallagher, New York City (David L. Foster, Stacey E. Paradise, of counsel), Fish & Neave, New York City (Thomas L. Secrest, of counsel), for plaintiff.

Jaroslawicz & Jaros, New York City (David Jaroslawicz, Robert J. Tolchin, of counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Reuben H. Donnelley Corporation ("RHD") brings this action against defendants Mark I Marketing Corporation ("Mark I"), Mark I Marketing Corporation of America ("Mark I–A"), and Wallace Edwards for a declaration that it is not infringing United States patent no. 4,554,241, that the patent is invalid, that it is not in violation of a licensing agreement (the "Agreement") between it and Mark I–A, that it does not owe defendants any royalties under the Agreement, and for the return of certain royalties paid to defendants under the Agreement. In their answer, defendants counterclaim for an accounting under the Agreement, for fraud and breach of contract, and for an injunction against plaintiff's use of a process covered by the Agreement. Plaintiff has moved under Fed.R.Civ.P. 12(b)(6) to dismiss all but defendants' counterclaim for an accounting for failing to state claims on which relief can be granted. For the reasons stated below, we grant plaintiff's motion in part, but allow defendants thirty days from the date of this opinion and order to amend their counterclaims to overcome the pleading inadequacies discussed below.

## BACKGROUND

A widely used method of color printing, known as the four-color process, utilizes four different colors of transparent ink (Cyan, Magenta, Yellow, and Black) superimposed on each other, to produce a full-color image. In the 1970s, Defendant Wallace Edwards developed a process utilizing two colors of

opaque ink layered on colored paper to produce a full-color or near full-color image. Because the two-color process, entitled Markolor, requires less ink than the four-color process, it can be used on thinner paper and is ideal for use in printing telephone yellow page advertisements.

Defendant Edwards applied for and received a Canadian patent covering the Markolor process, No. 1,168,508 ("the '508 patent"), on June 5, 1984, and a related United States patent, No. 4,554,241 ("the '241 patent"), on November 19, 1985. Edwards then assigned all rights to the '241 patent to Mark I.

Prior to receiving the '241 patent, on October 25, 1984 Mark I–A, an affiliate of Mark I, entered into a licensing agreement (the "Agreement") with RHD, granting it a fifteen-year renewable exclusive license to promote and market the Markolor process embodied in the '508 patent and other then pending or future acquired patents. In exchange, RHD agreed to pay a flat licensing fee in addition to a portion of its revenue from sublicensing the use of the process. RHD also covenanted to "use its best efforts to reasonably promote sales of the [Markolor] Process so that the benefits to be derived by RHD and [Mark I–A were] maximized." That agreement was amended in 1987 and again in 1990; the later amendment narrowing RHD's exclusivity to the United States and Great Britain and adjusting the fees paid by RHD to Mark I–A.

Subsequently, RHD began using and marketing a printing process allegedly not covered under the terms of the Agreement (the "Four Color Process"). Mark I and Mark I–A, contending that the so-called Four Color Process was indistinguishable from the Markolor process covered by the Agreement, the '508 patent, and the '241 patent, repeatedly demanded that RHD pay royalties for its use and promotion of the process. In response, RHD filed this suit against Mark I, Mark I–A, and Edwards seeking a declaration that its use of the Four Color Process does not infringe the '241 patent, that the '241 patent is invalid, that it is not in breach of the Agreement, and that it does not owe Mark I–A royalties for using and promoting the Four Color Process. In addition, RHD seeks the return of certain royalties mistakenly paid under the Agreement.

The defendants have counterclaimed for an accounting pursuant to the Agreement, for breach of contract for RHD's failure to pay royalties for using the Markolor process, for breach of contract for RHD's failure to use its best efforts to promote sales of the Markolor process to others, for fraud based on RHD's concealment of its use of the Markolor process, and for an injunction against RHD's ongoing and future use of the Markolor process. In addition to seeking compensatory damages, defendants seek punitive damages for plaintiff's bad faith and fraud, and attorneys fees pursuant to 35 U.S.C. § 285 in light of the alleged frivolity of RHD's declaratory judgment suit.

Prior to answering defendants' counterclaims, plaintiff filed the instant motion to dismiss defendants' second through fifth counterclaims under Rule 12(b)(6), Fed. R.Civ.P., for failing to state claims on which relief can be granted. In response, contending that no case or controversy exists concerning the '241 patent, defendants cross-moved to dismiss plaintiff's patent infringement and validity declaratory judgment claims. Defendants having voluntarily withdrawn their cross-motion, we must now decide the legal viability of defendants' second through fifth counterclaims as pled. We address each of plaintiff's arguments in the order presented to the Court.

## A. FRAUD

The parties have proceeded on the assumption that New York law controls defendants' common law claims, including their fraud cause of action. Because the parties to the Agreement, RHD and Mark I–A, have their principal places of business in New York, the alleged wrongful conduct apparently took place in New York, and the Agreement, out of which the instant dispute arises, contains a New York choice of law provision, we do likewise.

■ To maintain an action for fraud under New York law, a plaintiff must allege "(1) that [the defendant] made a misrepresenta-

tion (2) as to a material fact (3) which was false (4) and known to be false by [the defendant] (5) that was made for the purpose of inducing [the plaintiff] to rely on it (6) that [the plaintiff] rightfully did so rely (7) in ignorance of its falsity (8) to his injury." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987)). However, when the alleged fraud is not separate and distinct from a failure to perform under a contract, the claim is treated as one sounding in contract rather than tort. *Trusthouse Forte (Garden City) Management v. Garden City Hotel, Inc.*, 106 A.D.2d 271, 272, 483 N.Y.S.2d 216, 218 (N.Y.App.Div.1984); *Vista Co. v. Columbia Pictures Indus. Inc.*, 725 F.Supp. 1286, 1294 (S.D.N.Y.1989); *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F.Supp. 579, 582 (S.D.N.Y.1989).

Plaintiff first asserts that defendants' purported fraud counterclaim is actually a breach of contract claim, and must be dismissed under New York law. Because defendants allege only that plaintiff's fraudulent scheme consisted of concealing its use of the Markolor process from Mark I–A to avoid paying royalties under the Agreement, conduct also constituting a breach of contract, plaintiff argues that "the only fraud charged relates to a breach of contract" and that therefore the rule articulated in *Trusthouse* controls. *Trusthouse*, 106 A.D.2d at 272, 483 N.Y.S.2d at 218.

Defendants counter by arguing that plaintiff breached fiduciary duties in addition to contractual duties it owed to Mark I–A and is therefore liable for constructive fraud. In addition, defendants contend that plaintiff's concealment of its breach constitutes a separate claim for ordinary fraud.

First, citing *Mandelblatt v. Devon Stores*, 132 A.D.2d 162, 167–68, 521 N.Y.S.2d 672, 676 (N.Y.App.Div.1987), which recognized the principle that "the same conduct which may constitute a breach of a contractual obligation may also constitute a breach of a duty arising out of the relationship created by contract but which is independent of the contract itself," defendants contend that plaintiff has breached an independent fiduciary duty arising out of the contract by using the Markolor process without paying royalties and/or failing to promote the Markolor process as contractually required. We do not agree.

 Under New York law, a fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another. *Teachers Ins. & Annuity Ass'n of America v. Wometco Enterprises, Inc.*, 833 F.Supp. 344, 349–50 (S.D.N.Y.1993). Whether one party is a fiduciary of another depends on the relationship between the parties. For example, the attorney/client and doctor/patient relationships are sufficiently rooted in trust and confidence to trigger super-contractual fiduciary duties. *Krouner v. Koplovitz*, 175 A.D.2d 531, 532, 572 N.Y.S.2d 959, 961 (N.Y.App.Div.1991) (attorney/client); *Tighe v. Ginsberg*, 146 A.D.2d 268, 271, 540 N.Y.S.2d 99, 100 (N.Y.App.Div. 1989) (doctor/patient). However, "a conventional business relationship does not create a fiduciary relationship in the absence of additional factors ..." *Feigen v. Advance Capital Management Corp.*, 150 A.D.2d 281, 283, 541 N.Y.S.2d 797, 799 (N.Y.App.Div.1989) (citing *Payrolls & Tabulating, Inc. v. Sperry Rand Corp.*, 22 A.D.2d 595, 598, 257 N.Y.S.2d 884, 887 (N.Y.App.Div.1965)).

 Defendants have not established that the contractual relationship between Mark I–A and RHD gave rise to any fiduciary duties on the part of RHD.[1] Defendants point to no "duties," apart from those specifically enumerated by the licensing agreement, that plaintiff allegedly breached. As New York law holds, however, an arms-length licensor/licensee type relationship, without more, is not fiduciary in nature. *See Van Valkenburgh, Nooger & Neville Inc. v. Hayden Publishing Co.*, 33 A.D.2d 766, 766, 306 N.Y.S.2d 599, 600 (N.Y.App.Div.1969), *aff'd*, 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d

---

1. We note that in every contract there is an implied covenant of fair dealing and good faith. *River Bank of America v. Daniel Equities Corp.*, 624 N.Y.S.2d 287, 289 (N.Y.App.Div.1995). This covenant does not arise out of or create a fiduciary relationship, however.

142, *cert. denied,* 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972) (writer/publisher relationship not fiduciary); *Rodgers v. Roulette Records,* 677 F.Supp. 731, 739 (S.D.N.Y.1988) (music artist/recording company relationship not fiduciary). *But see Licette Music Corp. v. A.A. Records, Inc.,* 196 A.D.2d 467, 467–68, 601 N.Y.S.2d 297, 297–98 (N.Y.App.Div.1993) (prior dealings between licensee's president and owner of licensed copyrights created relationship of trust and confidence over and above licensing contract). Nor do defendants establish that they placed any special trust and confidence in RHD which created a fiduciary duty, or that RHD exercised control and responsibility over them. Indeed, absent the enumerated contractual obligations, plaintiff's alleged conduct would not be actionable. Because plaintiff's duties arise out of the contract language itself and not from any other relationship between the parties, breach of those duties does not give rise to a claim for constructive fraud.

■ As to their argument that they have properly pled a claim for ordinary fraud, defendants contend that by alleging that plaintiff intentionally concealed its breach of the agreement, which misled defendants into not taking action against it, they have established a cause of action independent of the breach itself. *Cohen,* 25 F.3d at 1172. Under New York law, however, alleged concealment of a breach is insufficient to transform what would normally be a breach of contract action into one for fraud. *MBW Advertising Network v. Century Business Credit Corp.,* 173 A.D.2d 306, 306–07, 569 N.Y.S.2d 682, 682 (N.Y.App.Div.1991); *Glynwill Investments, N.V. v. Prudential Securities, Inc.,* No. 92 Civ. 9267, 1995 WL 362500, at *6–*7 (S.D.N.Y. June 16, 1995); *Airlines,* 721 F.Supp. at 582; *Vista,* 725 F.Supp. at 1294. In *MBW,* the plaintiff pled fraud based, in part, on the defendant's misrepresentations that it was properly performing under a contract. Upholding the dismissal of the fraud claim, the court held that "a cause of action for fraud will not arise if the alleged fraud merely relates to the breach of contract." *MBW,* 173 A.D.2d at 306, 569 N.Y.S.2d at 682.

As in *MBW,* here, plaintiff's alleged concealment of its breach is nothing more than a breach of the contract itself. Moreover, the fact that defendants are not seeking compensatory damages for fraud separate from those flowing from the breach of the Agreement itself bolsters our holding. Accordingly, because defendants' counterclaim for fraud is nothing more than a breach of contract claim, we will treat it as such and grant plaintiff's motion to dismiss defendants' fourth counterclaim as being redundant of their second and third counterclaims and/or failing to state a claim on which relief can be granted.[2] Fed.R.Civ.P. 12(b)(6), 12(f).

## B. BREACH OF CONTRACT

■ Plaintiff next asserts that defendants' second and third counterclaims for breach of contract should be dismissed for failing to allege defendants' performance of their obligations under the contract. To state a claim for breach of contract under New York law, a party must allege: (i) the existence of an agreement between the plaintiff and defendant; (ii) due performance of the contract by the party alleging the breach; (iii) a breach; and (iv) damages resulting from the breach. *See R.H. Damon & Co. v. Softkey Software Prods., Inc.,* 811 F.Supp. 986, 991 (S.D.N.Y.1993). However, under the relaxed federal pleading requirements, "each element need not be separately plead." *Nordic Bank, PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 561 (S.D.N.Y.1985). It is

---

**2.** Plaintiff has moved to dismiss defendants' fraud counterclaim for failing to state a claim on which relief can be granted under Rule 12(b)(6). Fed.R.Civ.P. Given the liberal federal pleading requirements, however, we treat it as a breach of contract claim. Therefore, the more proper ground for dismissal is for being redundant of defendants' second and third counterclaims for breach of contract. Fed.R.Civ.P. 12(e).

We note that because defendants seek punitive damages under their fraud counterclaim, techni-

cally it is not redundant of their second counterclaim for breach of contract. However, our rejection of a punitive damage remedy under defendants' third counterclaim below is equally applicable to their fraud counterclaim here—essentially a breach of contract action. Therefore, to the extent that defendants' fourth counterclaim seeks punitive damages and is not redundant, we dismiss it under Rule 12(b)(6).

enough that the complaint contains "a short and plain statement of the claim" sufficient to put the defendant on notice of the grounds for which plaintiff seeks relief. Fed.R.Civ.P. 8(a)(2); 2A James W. Moore et al., Moore's Federal Practice ¶ 8.13 (2d ed. 1995). Nevertheless, as this Court has previously held, "when pleading a claim for breach of an express contract, ... the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract." *R.H. Damon,* 811 F.Supp. at 991 (citing 2A James W. Moore et al., Moore's Federal Practice ¶ 8.17[7] (2d ed. 1992)).

After examining defendants' counterclaims, we agree with plaintiff that, technically, defendants do not allege that they performed all of their obligations under the contract for which plaintiff was contractually required to render the alleged consideration, *e.g.,* actually providing plaintiff the fifteen-year renewable exclusive license to use and promote the Markolor process. We do note, however, that defendants allege in their third counterclaim that "plaintiff received an exclusive [sic] and that the defendants were prevented from marketing or selling their valuable product and process to others." Defendants' Answer at ¶ 47. In addition, paragraph 49 alleges that plaintiff "used its exclusive license," presupposing that defendants had granted plaintiff an exclusive license to use. Defendants' Answer at ¶ 49. On the other hand, nowhere do defendants allege that granting the license was their sole obligation under the contract. Therefore, in the strictest since, defendants have failed to state a breach of contract claim under New York law. *Id.*

Despite this noted infirmity, we do not think that outright dismissal of defendants' second and third counterclaims is warranted given our duty to construe the pleadings "to do substantial justice." Fed.R.Civ.P. 8(f). Instead, we feel it more appropriate to allow defendants thirty days from the date of this order to amend their answer to add an allegation that Mark I–A has performed all of its obligations under the Agreement that would entitle it to the relief sought herein. Therefore, conditioned upon defendants' filing of such amendment, we deny plaintiff's motion to dismiss on these grounds.

Plaintiff also moves to dismiss the third counterclaim 1) for defendants' failure to allege damages legally recoverable under a breach of contract claim, and 2) to the extent that it attempts to allege a claim for fraud arising out of a breach of contract. As damages, that counterclaim seeks "all of [defendants'] damages from the plaintiff, including exemplary and punitive damages because of the plaintiff's bad faith and fraud."

Addressing plaintiff's latter ground first, as we noted above, defendants have failed to state a claim for ordinary or constructive fraud distinct from their breach of contract claims. Therefore, to the extent that the third counterclaim alleges a fraud cause of action (constructive or ordinary), it must be dismissed. On the other hand, apart from the pleading infirmity noted above, the third counterclaim does properly articulate a breach of contract cause of action. Therefore, we must address the type of damages available under such a claim.

It is black letter New York law that punitive damages are not normally available for a breach of contract claim. *Rocanova v. Equitable Life Assurance Society of the United States,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 342–43, 634 N.E.2d 940, 943–44 (1994); *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 833, 353 N.E.2d 793, 795 (1976); *Cognotec Services Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 862 F.Supp. 45, 52 (S.D.N.Y.1994). In arguing that they are entitled to these damages, defendants point to *Mandelblatt,* 132 A.D.2d at 167, 521 N.Y.S.2d at 675, which states that "willful failure to perform the services called for under a personal services contract, [is an act] which normally constitute[s] a breach of contract for which the defaulting party must answer in damages and, if 'morally culpable,' punitive damages." We must assess the viability of this "morally culpable" exception under New York law.

In the seminal case defining the proper circumstances for awarding punitive damages, the New York Court of Appeals has recognized that, "punitive damages have been allowed in cases where the wrong com-

plained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future...." *Walker v. Sheldon,* 10 N.Y.2d 401, 404–05, 223 N.Y.S.2d 488, 490–91, 179 N.E.2d 497, 498 (1961) (citations omitted). The Court went on to state that to warrant punitive damages in fraud and deceit actions, a defendant must exhibit "fraud aimed at the public generally," evincing a "high degree of moral turpitude," and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Id.* at 405, 223 N.Y.S.2d at 491, 179 N.E.2d at 498.

More recently, the Court, citing *Walker,* established a two-part test to determine the propriety of awarding punitive damages in breach of contract cases: 1) the conduct constituting, accompanying, or associated with the breach of contract must be actionable as an independent tort for which compensatory damages are ordinarily available; and 2) the conduct must be sufficiently egregious under the *Walker* standard, i.e. egregious tortuous conduct aimed at the public in general, to warrant the additional imposition of exemplary damages. *Rocanova,* 83 N.Y.2d at 613, 612 N.Y.S.2d at 342–43, 634 N.E.2d at 943–44.

At least one intermediate New York court in addition to *Mandelblatt* has recognized that, notwithstanding the statement in *Walker* and the subsequent holding of *Rocanova,* in some, limited circumstances punitive damages are appropriate in contract cases, even when the breach is not aimed at the public, if the actions "involve that degree of bad faith evincing a disingenuous or dishonest failure to carry out a contract." *Aero Garage Corp. v. Hirschfeld,* 185 A.D.2d 775, 777, 586 N.Y.S.2d 611, 613 (N.Y.App.Div.), *leave to appeal denied,* 81 N.Y.2d 701, 594 N.Y.S.2d 715, 610 N.E.2d 388 (1992); *see also Williamson, Picket, Gross, Inc. v. Hirschfeld,* 92 A.D.2d 289, 295, 460 N.Y.S.2d 36, 41 (1983); *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting System, Inc.,* 672 F.2d 1095, 1106 (2d Cir.1982) (citing *Borkowski v. Borkowski,* 39 N.Y.2d 982, 387 N.Y.S.2d 233, 355 N.E.2d 287 (1976) ("It is not essential ... that punitive damages be allowed in a fraud case only where the acts have been aimed at the public generally.").

Similarly, seizing on the language from *Aero Garage,* our sister court in the Eastern District of New York, interpreting New York law, upheld a claim for punitive damages in a "private" contract dispute arising out of the breach of a series of contracts for the sale of eight cars. *Hudson Motors Partnership v. Crest Leasing Enterprises, Inc.,* 845 F.Supp. 969 (E.D.N.Y.1994). In that case, the court found the defendants' conduct sufficiently reprehensible to warrant imposing punitive damages for their intentional and willful breach of their contractual obligations by stopping payment on certain checks due under the contract; for their defiance of an order of the court by "spiriting away" a car that the court had ordered the marshal to seize; for their refusing to turn over the car even after they were made aware of the order; and for their moving to quash the order (and thus further frustrating plaintiff's contractual rights) on frivolous grounds. *Id.* at 978. While noting that the contractual breaches did not constitute public wrongs, the court rejected that requirement, holding that New York law allows for punitive damages in breach of contract cases any time the actions of the breaching party evidence such bad faith that the "twin aims of punitive damages"—punishment for egregious behavior and deterrence of similar future conduct—would be vindicated. *Id.* at 977; *Walker,* 10 N.Y.2d at 404–05, 223 N.Y.S.2d at 490–91, 179 N.E.2d at 498. Because defendants went beyond a willful breach of their contractual obligations and attempted to "thwart at every turn plaintiff's contractual rights," the court found punitive damages appropriate under the circumstances. *Id.* at 975.

█ Generally, this Court will look first to decisions of the New York Court of Appeals to ascertain and interpret controlling state law. *Gonzalez v. Rutherford Corp.,* 881 F.Supp. 829, 834 (E.D.N.Y.1995). Absent a ruling by that Court, we must "apply what [we] find to be the state law after giving

'proper regard' to the relevant rulings of other courts of the State." *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967). When state decisional law is ambiguous or uncertain, however, we must endeavor to predict how the highest court of the state would resolve the uncertainty or ambiguity. *U.S. East Telecommunications v. U.S. West Communications Services, Inc.,* 38 F.3d 1289, 1296 (2d Cir.1994).

Although *Rocanova* did not specifically address *Mandelblatt* or *Aero Garage,* we are skeptical of their continued viability in light of the Court of Appeals' recent, specific endorsement of the "public wrong" requirement. *See In re West 56th Street Assoc.,* 181 B.R. 720, 725 (S.D.N.Y.1995) (rejecting cases nullifying the "public wrong" requirement in light of *Rocanova* ); *Parke–Hayden, Inc. v. Loews Theatre Management Corp.,* 789 F.Supp. 1257, 1267–68 (S.D.N.Y.1992) (rejecting cases nullifying the "public wrong" requirement even before the Court's pronouncement in *Rocanova* ). We similarly question whether the "twin aims" test from *Hudson Motors* is an accurate representation of New York law. Ultimately, however, we need not decide these questions, because even apart from the "public wrong" requirement, plaintiff's conduct in the present action does not rise to the level of "moral culpability" or bad faith necessary to invoke punitive sanctions under any of these tests.[3]

 In defining punitive damage standard in the fraud context, the Court of Appeals has indicated that a breaching party must evince "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Walker,* 10 N.Y.2d at 405, 223 N.Y.S.2d at 491, 179 N.E.2d at 498. Here, plaintiff has merely denied that it is breaching its contractual obligations and admitted that it is using and promoting a printing process other than that of defendants. A willful breach of contract does not warrant the imposition of punitive damages, however. *Philips v. Republic Ins. Co.,* 108 A.D.2d 845,

846, 485 N.Y.S.2d 566, 567–68 (N.Y.App.Div.), *aff'd,* 65 N.Y.2d 1000, 494 N.Y.S.2d 301, 484 N.E.2d 664 (1985). Unlike *Hudson,* plaintiff has not attempted to "thwart at every turn [defendants'] contractual rights." *Hudson Motors,* 845 F.Supp. at 975. Nor have they attempted to circumvent the authority of this Court to adjudicate their contractual rights and duties. In fact, plaintiff, not defendants, first invoked the jurisdiction of this Court, seeking a declaration that it was not in violation of its contractual duties. On the facts of this case, plaintiff has not exhibited the moral culpability alluded to *Mandelblatt* and found necessary to impose punitive damages in *Aero Garage* and *Hudson Motors.* Therefore, defendants' prayer for punitive damages on their third counterclaim is hereby dismissed.

## C. INJUNCTIVE RELIEF

Finally, plaintiff moves to dismiss defendants' last counterclaim which seeks to enjoin plaintiff permanently from using the Markolor process. Plaintiff argues that because defendants fail to supply a legal basis for seeking an injunction, they have failed to state a claim on which the relief they seek can be granted. Fed.R.Civ.P. 12(b)(6). We agree.

 There is no "injunctive" cause of action under New York or federal law. Instead, defendants must allege some wrongful conduct on the part of plaintiff for which their requested injunction is an appropriate remedy. Moreover, they must allege that they will suffer irreparable harm because of the conduct, e.g., that they have no adequate remedy at law, and that the balance of equities weighs in their favor. *Travellers Int'l AG v. Trans World Airlines, Inc.,* 722 F.Supp. 1087, 1096 (S.D.N.Y.1989).

 Reading their complaint broadly, as we must under the Federal Rules, Fed. R.Civ.P. 8(f), the wrongful conduct on which defendants hinge their plea for injunctive relief appears to be plaintiff's alleged past and continuing breaches of the Agreement.

---

**3.** Were we to apply the *Rocanova* test here, defendants punitive damage claim would fail for the additional reason of failing to allege conduct that independently establishes a cause of action in tort for which compensatory damages are available. *Rocanova,* 83 N.Y.2d at 613, 612 N.Y.S.2d 339, 634 N.E.2d at 943–44, 612 N.Y.S.2d at 342–43.

In their fifth counterclaim, defendants incorporate by reference essentially all of their allegations under their first through fourth counterclaims. As we held above, these allegations make out claims for breaching the licensing agreement by refusing to permit an accounting, by failing to pay royalties, and by failing to use their best efforts to use and promote the Markolor process.

This "wrongful conduct" is insufficient to sustain defendants' requested injunctive relief for at least two reasons. First, defendants fail to establish that they will suffer irreparable harm by demonstrating the inadequacy of money damages. On the other hand, clearly money damages would fully compensate defendants for plaintiff's past failures to pay royalties, and, quite possibly, for plaintiff's alleged failure to use its best efforts to market the Markolor process. Absent a demonstration that these damages are inadequate, injunctive relief is inappropriate in this breach of contract action. *O'Neill v. Poitras*, 158 A.D.2d 928, 928, 551 N.Y.S.2d 92, 93 (N.Y.App.Div.1990).

■ Second, even assuming that money damages are inadequate due to the prospect of future unquantifiable harm, the injunction, permanently preventing plaintiff from using the Markolor process, is not tailored to remedy any irreparable harm stemming from the alleged wrongful conduct—breaching the Agreement. Instead, the injunction as requested would enjoin enforcement of the Agreement altogether, revoking the exclusive license to promote and use the Markolor process in addition to preventing plaintiff from otherwise using it in the future. Absent the Agreement, however, defendants make no allegation that plaintiff's use of the process constitutes wrongful conduct from which they will suffer irreparable injury. A permanent injunction is not a form of punishment, but an equitable remedy designed to alleviate a specific, prospective harm for which money damages will not compensate an injured plaintiff. *See Flaum v. Birnbaum*, 115 A.D.2d 1004, 1005, 497 N.Y.S.2d 567, 569 (N.Y.App.Div.1985).

■ Despite these noted infirmities, we are not convinced that defendants can plead no set of facts which would warrant the imposition of the requested injunction. For instance, if defendants assert that they can legally terminate the licensing agreement and that the '241 patent owned by Mark I would then prevent plaintiff from using the Markolor process, provided the other conditions discussed above are met, an injunction against RHD's use of the process may be appropriate relief. *See, e.g.,* 35 U.S.C. § 283. On a motion to dismiss under Rule 12(b)(6), however, we must look only at the four corners of the complaint. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991). Therefore, because the complaint itself gives no basis for granting an injunction we must dismiss defendants' fifth counterclaim as improperly pled. In light of our belief that defendants might possibly be entitled to an injunction given the appropriate allegations, however, we will grant defendants leave to amend their answer within thirty days of the date of this opinion and order to allege a claim on which injunctive relief may be based.

## CONCLUSION

For the reasons stated above, the defendants' following counterclaims are dismissed: (1) the fourth counterclaim; (2) the third counterclaim to the extent that it alleges a claim for fraud growing out of a breach of contract, and to the extent that it seeks punitive and exemplary damages; and (3) the fifth counterclaim. Defendants are given leave to amend their answer within thirty days of the date of this opinion and order to allege their due performance under the Agreement in their second and third counterclaims and to replead their counterclaim seeking injunctive relief if they can properly allege facts establishing a legal basis for that remedy.

**SO ORDERED.**