The **REUBEN H. DONNELLEY CORPORATION, Plaintiff,**

v.

**MARK I MARKETING CORPORATION, Mark I Marketing Corporation of America, and Wallace Edwards, Defendants.**

No. 94 Civ. 6756 (WCC).

United States District Court, S.D. New York.

May 16, 1996.

Willkie Farr & Gallagher, New York City (David L. Foster, Stacey E. Paradise, of counsel), Fish & Neave, New York City (Thomas L. Secrest, of counsel), for Plaintiff.

Jaroslawicz & Jaros, New York City (David Jaroslawicz, Robert J. Tolchin, of counsel), for defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Reuben H. Donnelley Corporation ("RHD") brings this action against defendants Mark I Marketing Corporation ("Mark I"), Mark I Marketing Corporation of America ("Mark I–A"), and Wallace Edwards ("Edwards") for a declaration that it is not infringing United States patent no. 4,554,241, that the patent is invalid, that it is not in violation of a licensing agreement (the "Agreement") between it and Mark I–A, that it does not owe defendants any royalties under the Agreement, and for the return of certain royalties paid to defendants under the Agreement. In their original answer, defendants counterclaimed for an accounting under the Agreement, for fraud and breach of contract, and for an injunction against plaintiff's use of a process covered by the Agreement. Plaintiff moved to dismiss all but defendants' counterclaim for an accounting for failing to state claims on which relief can be granted. This Court granted plain-

tiff's motion in part, but allowed defendants leave to amend their counterclaims to overcome the pleading inadequacies. *See Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F.Supp. 285 (S.D.N.Y.1995). In their amended answer, defendants again have counterclaimed for an accounting under the Agreement, for fraud and breach of contract, and for an injunction against plaintiff's use of a process covered by the Agreement. Pursuant to Rules 12(b)(6), 12(f), and 9(b) of the Federal Rules of Civil Procedure, plaintiff has moved to dismiss defendants' first, fourth and fifth counterclaims. For the reasons discussed below, plaintiff's motion is granted in part.

### BACKGROUND

A widely used method of color printing, known as the four-color process, utilizes four different colors of transparent ink (cyan, magenta, yellow, and black) superimposed on each other, to produce a full-color image. In the 1970s, defendant Edwards developed a process utilizing two colors of opaque ink layered on colored paper to produce a full-color or near full-color image. Because the two-color process, entitled Markolor, requires less ink than the four-color process, it can be used on thinner paper and is ideal for use in printing telephone yellow page advertisements.

Defendant Edwards applied for and received a Canadian patent covering the Markolor process, No. 1,168,508 ("the '508 patent"), on June 5, 1984, and a related United States patent, No. 4,554,241 ("the '241 patent"), on November 19, 1985. Edwards then assigned all rights to the '241 patent to Mark I.

Prior to receiving the '241 patent, on October 25, 1984 Mark I–A, an affiliate of Mark I, entered into a licensing agreement (the "Agreement") with RHD, granting it a fifteen-year renewable exclusive license to promote and market the Markolor process covered by the '508 patent and other then pending or future acquired patents. In exchange, RHD agreed to pay a flat licensing fee in addition to a portion of its revenue from sublicensing the use of the process. Furthermore, RHD covenanted to "use its best efforts to reasonably promote sales of the [Markolor] Process so that the benefits to be derived by RHD and [Mark I–A were] maximized." RHD also agreed to permit "[Mark I–A] and its employees and accountants ... to inspect RHD's books, records and material relating to licensing, royalty and other fee revenues...." That agreement was amended in 1987 and again in 1990, the later amendment narrowing RHD's exclusivity to the United States and Great Britain and adjusting the fees paid by RHD to Mark I–A.

Subsequently, RHD began using and marketing a printing process which RHD maintains is not covered under the terms of the Agreement (the "Four Color Process"). Mark I and Mark I–A, contending that the so-called Four Color Process was indistinguishable from the Markolor process covered by the Agreement, the '508 patent, and the '241 patent, repeatedly demanded that RHD pay royalties for its use and promotion of the process. In response, RHD filed this suit against Mark I, Mark I–A, and Edwards seeking a declaration that its use of the Four Color Process does not infringe the '241 patent, that the '241 patent is invalid, and that it is not in breach of the Agreement, and that it does not owe Mark I–A royalties for using and promoting the Four Color Process. In addition, RHD seeks the return of certain royalties mistakenly paid under the Agreement.

In their original answer, defendants counterclaimed (1) for an accounting pursuant to the Agreement, (2) for breach of contract for RHD's failure to pay royalties for using the Markolor process, (3) for breach of contract for RHD's failure to use its best efforts to promote sales of the Markolor process to others, (4) for fraud based on RHD's concealment of its use of the Markolor process, and (5) for an injunction against RHD's ongoing and future use of the Markolor process. In addition to seeking compensatory damages, defendants sought punitive damages for plaintiff's bad faith and fraud, and attorneys fees pursuant to 35 U.S.C. § 285 in light of the alleged frivolity of RHD's declaratory judgment suit.

Upon plaintiff's motion to dismiss all but defendants' counterclaim for an accounting, this Court (1) granted plaintiff's motion with respect to the fraud counterclaim and one of the breach of contract counterclaims to the extent that it alleged a claim for fraud growing out of the breach, and to the extent that it sought punitive and exemplary damages; and (2) granted plaintiff's motion with leave to replead with respect to the counterclaim for injunctive relief. *See Reuben H. Donnelley,* 893 F.Supp. at 288–94. In addition, we granted defendants leave to amend their answer to cure the pleading deficiency in their breach of contract counterclaims. *Id.* at 291.

Defendants have filed an amended answer in which they reassert all their original counterclaims in amended form as permitted by our prior opinion. Plaintiff now has moved to dismiss defendants' first, fourth, and fifth counterclaims in which defendants assert claims for an accounting, for fraud, and for injunctive relief.

## DISCUSSION

The parties have proceeded on the assumption that New York law controls defendants' common law claims. Because the parties to the Agreement have their principal places of business in New York, the alleged wrongful conduct apparently took place in New York, and the Agreement, out of which the instant dispute arises, contains a New York choice of law provision, we do likewise.

### I. Accounting

█ In defendants' first counterclaim, in addition to asserting a claim for an accounting, defendants have added a paragraph to allege a breach of contract. *See* Am.Ans. ¶ 38 ("The plaintiff's failure and refusal to permit the defendants to review the plaintiff's books and records or obtain an accounting breaches the agreement between the parties."). To state a claim for breach of contract under New York law, a party must allege (1) the existence of an agreement between plaintiff and defendant, (2) due performance of the contract by the party alleging the breach, (3) a breach, and (4) damages resulting from the breach. *Reuben H. Donnelley,* 893 F.Supp. at 290; *see R.H. Damon*

*& Co. v. Softkey Software Prods., Inc.,* 811 F.Supp. 986, 991 (S.D.N.Y.1993). As this Court previously has held, "when pleading a claim for breach of an express contract, ... the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract." *Reuben H. Donnelley,* 893 F.Supp. at 291; *see R.H. Damon,* 811 F.Supp. at 991 (citing 2A James W. Moore et al., Moore's Federal Practice ¶ 8.17[7] (2d ed. 1992)).

█ Plaintiff argues that defendants have failed to allege in the first counterclaim that Mark I–A performed all its obligations under the contract. Based on this precise point, we previously granted defendants leave to amend the second and third counterclaims for breach of contract to add an allegation that Mark I–A had performed all its obligations under the Agreement that would entitle it to the relief sought. *See Reuben H. Donnelley,* 893 F.Supp. at 291. Plaintiff correctly notes that the first counterclaim as amended lacks, as did the second and third counterclaims in the original answer, the allegation that Mark I–A has performed its obligations under the Agreement. Plaintiff argues in the alternative that if defendants are not charging a breach of contract in the first counterclaim as amended, then the breach of contract allegation found in paragraph 38 should be stricken as irrelevant and immaterial. Otherwise, plaintiff argues, defendants must allege due performance in order to state a viable claim for breach of contract.

█ Defendants argue that the first counterclaim seeks only an accounting, and does not assert a breach of contract claim. We do not agree. Paragraph 38 plainly alleges that plaintiff's failure to provide an accounting constitutes a breach of the Agreement. To cure this pleading infirmity, and because defendants themselves maintain that the first counterclaim does not assert a cause of action for breach of contract, we strike paragraph 38 from the amended answer, Fed. R.Civ.P. 12(f), thus reverting defendants' first counterclaim essentially to its original uncontested form as a claim for an accounting. Given our duty to construe the pleadings "to do substantial justice," Fed.R.Civ.P. 8(f), we take this action rather than dismiss

defendants' first counterclaim outright pursuant to Fed.R.Civ.P. 12(b)(6).

## II.  Fraud

■ In our prior opinion, we dismissed defendants' original fraud counterclaim on the ground that it was not distinct from defendants' breach of contract counterclaims. *See Reuben H. Donnelley*, 893 F.Supp. at 288–90. Defendants have re-asserted a fraud counterclaim, although we did not grant leave to replead this claim. Defendants assert that the repleaded fraud counterclaim complains of conduct entirely different from that addressed in the original fraud counterclaim. This conduct, defendants argue, was not discovered until July 25, 1995, long after the original answer was filed, and just three days before this Court's opinion was issued.

Defendants' new fraud counterclaim is premised on plaintiff's alleged breach of a "fiduciary duty" to classify directories honestly. Defendants allege that plaintiff intentionally misclassified directories into low rate royalty categories in order to short-change defendants under the Agreement. Even assuming that the repleaded fraud counterclaim is based on newly pleaded factual allegations—a premise we do not necessarily accept—it still "seeks to enforce no more than the breached promises and obligations of a contract," *R.H. Damon*, 811 F.Supp. at 992, and therefore suffers the same infirmity as did the original fraud counterclaim. Defendants' fraud counterclaim must be dismissed as redundant of their breach of contract counterclaims because the duties allegedly breached by plaintiff, and any relief that may be recovered by defendants, arise only in contract. *See id.* On these grounds, among others, we dismissed defendants' original fraud counterclaim in our prior opinion, *see Reuben H. Donnelley*, 893 F.Supp. at 288–90, and the same principles apply to the amended fraud counterclaim. Rather than repeat the entirety of our discussion dismissing defendants' original fraud counterclaim, we direct the parties to our prior opinion. *See id.*

## III.  Injunctive Relief

■ This Court dismissed defendants' original counterclaim for injunctive relief, seeking to permanently enjoin plaintiff from using the Markolor process, for failure to state a claim on which the relief sought could be granted. Fed.R.Civ.P. 12(b)(6); *see Reuben H. Donnelley*, 893 F.Supp. at 293–94. We noted that an "injunction" cause of action does not exist under New York or federal law. *Reuben H. Donnelley*, 893 F.Supp. at 293.

> Instead, defendants must allege [1] some wrongful conduct on the part of plaintiff for which their requested injunction is an appropriate remedy ... [2] that they will suffer irreparable harm because of the conduct, e.g., that they have no adequate remedy at law, and [3] that the balance of equities weighs in their favor.

*Id.; see Travellers International AG v. Trans World Airlines, Inc.*, 722 F.Supp. 1087, 1096 (S.D.N.Y.1989). We observed that "the wrongful conduct on which defendants hinge their plea for injunctive relief appears to be plaintiff's alleged past and continuing breaches of the Agreement." *Reuben H. Donnelley*, 893 F.Supp. at 293. We held that this "wrongful conduct" was insufficient to sustain defendants' requested injunctive relief for at least two reasons. First, defendants failed to establish that they will suffer irreparable harm by demonstrating the inadequacy of money damages. *Id.* at 294. Second, even assuming that money damages are inadequate, the injunction, permanently preventing plaintiff from using the Markolor process, was not tailored to remedy any irreparable harm stemming from the alleged wrongful conduct—i.e., breaching the Agreement. *Id.* We granted defendants leave to amend the answer to cure the noted pleading deficiency.

After pointing out the infirmity in defendants' counterclaim for injunctive relief, we advised that defendants could satisfy their burden by asserting that they can legally terminate the licensing agreement *and* that the '241 patent owned by Mark I would then prevent plaintiff from using the Markolor process. *Id.* However, defendants have failed to allege that they possess any interest

outside of the Agreement that would entitle them to the injunctive relief sought. As we stated in our prior opinion:

> [T]he injunction, permanently preventing plaintiff from using the Markolor process, is not tailored to remedy any irreparable harm stemming from the alleged wrongful conduct—breaching the Agreement. Instead, the injunction as requested would enjoin enforcement of the Agreement altogether, revoking the exclusive license to promote and use the Markolor process in addition to preventing plaintiff from otherwise using it in the future. Absent the Agreement, however, defendants make no allegation that plaintiff's use of the process constitutes wrongful conduct from which they will suffer irreparable injury.

*Id.* The amended answer confirms our previous observation that the wrongful conduct on which defendants hinge their plea for injunctive relief is plaintiff's alleged breaches of the Agreement. Defendants' amended answer is conspicuously devoid of any allegation that plaintiff is infringing any patent, or other property interest, owned by defendants that would entitle them to the injunction sought. In the absence of patent protection or other property right, which defendants refrain from asserting, the process may not be protected by permanently enjoining plaintiff from its use.

## CONCLUSION

For the foregoing reasons, paragraph 38 of the amended answer is stricken. Plaintiff's motion to dismiss is granted with respect to defendants' fourth counterclaim for fraud and defendants' fifth counterclaim for injunctive relief.

So Ordered.