**OHM REMEDIATION SERVICES CORP., Plaintiff,**

v.

**HUGHES ENVIRONMENTAL SYS-TEMS, INC., ERM Northeast, Inc., Defendants.**

No. 96–CV–110.

United States District Court,
N.D. New York.

Jan. 22, 1997.

Goodwin, Procter, & Hoar, L.L.P., Boston, MA (Todd R. Cronan, Michael S. Elder, of counsel), for Plaintiff.

Hallenbeck, Lascell, Rochester, NY (David M. Lascell, of counsel), Ernstrom, Dreste, L.L.P., Rochester, NY (Todd Braggins, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND AND FACTS

This lawsuit arises out of a contract entered into on June 30, 1994, between the plaintiff, OHM Remedial Services, Inc. ("OHM"), a New Jersey Corporation, and co-defendant, Hughes Environmental Systems, Inc. ("Hughes"), a California Corporation. The contract concerned the environmental remediation of manufacturing facility located in Massena, New York ("the Massena Site").

The specific parties to the contract at issue are OHM Remediation Services Corp. ("OHM"), the general contractor, and Hughes Environmental Systems, Inc. ("HESI"), General Motors' ("GM") supervisory contractor and express agent. HESI is a wholly owned subsidiary of Hughes Aircraft Company, which in turn is a wholly owned subsidiary of GM.

The facts and procedural background relating to this case are set forth at length in this Court's Memorandum–Decision and Order filed on August 16, 1996, and need not be repeated herein.

On January 11, 1996, GM filed an action against OHM in the United States District Court for the Eastern District of Michigan ("the Michigan action"). On January 19, 1996, OHM filed this action against Hughes and ERM ("the New York action"). On February 9, 1996, OHM filed a motion to transfer venue of the Michigan action to New York. The Michigan Court granted OHM's motion and venue was transferred to the Northern District of New York. *General Motors Corp. v. OHM Remedial Services, Corp.*, 96–CV–70141 (E.D.Mich.1996).

On February 21, 1996, pursuant to 28 U.S.C. § 1404(a) and Local Rule 7.1, Hughes filed a motion to transfer venue of the New York action to the Eastern District of Michigan. Hughes also moved to stay further proceedings pending the decision of the motion to transfer venue. The Court, *inter alia*, denied these motions by the August Decision.

Now before the Court are the motions by GM to (1) consolidate the *GM v. OHM*, 96–CV–1214 action with the *OHM v. HESI and ERM*, 96–CV–110 action; and (2) to dismiss OHM's third and fourth claims as duplicative of the breach of contract claim.

## II. DISCUSSION

### A. Motion to Consolidate

GM's motion to consolidate is not opposed. Generally, when actions involving a common question of law or fact are pending before the Court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. *Id.* "The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied* 498 U.S. 920, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). In the Court's view, consolidation of the present case with *OHM v. HESI and ERM*, 96–CV–110 is appropriate to promote considerations of judicial economy, *see Johnson*, 899 F.2d at 1284, or possibly to avoid conflicting results, *see Bank of Montreal v. Eagle Assoc.*, 117 F.R.D. 530, 533 (S.D.N.Y.1987). Accordingly, GM's motion to consolidate is granted.

## B. Standard for a Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claim. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). The Court's role is not to assess whether a Plaintiff has raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in motion pursuant to Fed.R.Civ.P. 56 for summary judgment, but whether the Plaintiff has alleged sufficiently in their Complaint all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.*, 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), *citing Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 124 (2d Cir.1991). "In considering Rule 12 motions to dismiss, the Court must accept the facts appearing on the face of the complaint as true, and consider them along with such reasonable inferences as may be drawn in complainant's favor." *Detko v. Blimpies Restaurant*, 924 F.Supp. 555, 556 (S.D.N.Y.1996), *citing Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court now turns to an examination of the Complaint.

## C. Dismissal of Third Claim

The plaintiff OHM's third claim is one for Fraud and Misrepresentation. OHM alleges that HESI "issued [a Request for Proposals ("RFP")] for the Messena project that provided for cost re-estimates after pre-final/final design documents were complete." Complaint at ¶ 50. Prior to signing the contract, OHM relied "on the representations about cost re-estimation in the RFP in preparing its bid and, thereafter, in performing work at the direction of" HESI. *Id.* at ¶ 51. The ultimate basis for the fraud claim is that HESI "entered into the Contract with OHM ... with the intent to disregard the representations in the RFP for re-estimating and fixing costs based on final design documents." *Id.* at ¶ 53.

GM claims that the above allegations are a recasting of the plaintiff's first claim, breach of contract. *See* Complaint at ¶ 43 (HESI breach its contract with OHM by "refusing, without justification to recognize the contrac-tual right of OHM to re-estimate the estimated cost."). More specifically, GM claims that OHM has merely alleged that HESI entered into a contract with no intention of performing. That, according to GM, is insufficient to support a fraud claim. *See New York Univ. v. Continental Insur. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Papa's–June Music, Inc. v. McLean*, 921 F.Supp. 1154 (S.D.N.Y.1996). In addition, GM claims that, pursuant to Fed.R.Civ.P. 9(b), OHM has failed to allege fraud with the requisite particularity.

OHM counters by arguing "that a claim of fraudulent inducement to contract may be maintained simultaneously with a cause of action for breach of the same contract." Memorandum of Law in Opposition at 4, *citing Bibeau v. Ward*, 193 A.D.2d 875, 596 N.Y.S.2d 948 (3d Dep't 1993). OHM then distinguishes the cases cited by GM from the instant case by pointing out that, unlike the situation presented in the cases cited by GM, (1) it believes the representations made by HESI to be material misrepresentations; and (2) the fraud claim arises out of the RFP, which preceded the contract at issue, and thus, arises from facts distinct from those alleged in OHM's first claim.

"[I]t is well settled in New York that "mere allegations of breach of contract do not give rise to a claim for fraud or fraudulent inducement." *Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 123 (S.D.N.Y.1996), *citing Sudul v. Computer Outsourcing Servs.*, 868 F.Supp. 59, 61–62 (S.D.N.Y.1994) (citations omitted). However, New York's Court of Appeals has long held that "a promise ... made with a preconceived and undisclosed intention of not performing it, ... constitutes a misrepresentation." *Sabo v. Delman*, 3 N.Y.2d 155, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906, 908 (1957). As *Schudroff* points out, it was *Sabo* that relied "on the slippery distinction between a misrepresentation of present fact and a misrepresentation of future intent," in an attempt to craft a rule that would satisfy the apparent overlap of these two general legal principles. 929 F.Supp. at 123. Under *Sabo*, it is the former that is actionable as a fraud, and the latter that is not. *See Id.*

However, unlike *Schudroff,* the *Sabo* plaintiff "neither asserts a breach of contract nor attempts to enforce any promise made by defendants." 3 N.Y.2d at 159, 164 N.Y.S.2d at 716, 143 N.E.2d at 908. Thus, *Sabo* does not address the situation before the Court today, or before the *Schudroff* Court, i.e., whether and under what parameters a plaintiff simultaneously may bring a breach of contract claim and a claim for fraud in the inducement. *Schudroff* sets out guideposts by noting that "[m]ost courts have refused to permit fraud claims arising from contractual relationships unless (1) the claims are premised on a 'a separate duty outside the [contract] or (2) the plaintiff seeks to recover 'special damages proximately caused by the alleged false representations that are not recoverable under the contract measure of damages.'" *Id.* (citations omitted); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,* 98 F.3d 13, 20 (2d Cir.1996) ("To maintain a claim of fraud ... a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract, (citation omitted) or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract."). Thus, if the fraud claim is based on an agreement not integrated into the contract at issue, such as a collateral oral agreement, the plaintiff may maintain a claim for fraud simultaneously with the breach of contract claim.

■ Based on the legal principles set forth above, the critical task for the Court is determining to what extent the alleged intention not to re-estimate costs, given that such a term is alleged to be a part of the RFP, is distinct from the allegations undergirding the breach of contract claim. In other words, the Court must assess whether the two claims are sufficiently distinct. The Court finds that there is no distinction such that the OHM may maintain simultaneous claims for breach of contract and fraud in the inducement.

OHM's first claim is for breach of contract. One way in which OHM alleges that HESI breach the contract is by "refusing, without justification, to recognize the contractual right of OHM to re-estimate the estimated cost set out at Section 4.1.2 of the Contract when final design documents were complete." Complaint at ¶ 43. The plaintiff's third claim is for fraud. As stated above, the basis for the fraud claim is that HESI "entered into the Contract with OHM ... with the intent to disregard the representations in the RFP for re-estimating and fixing costs based on final design documents." Complaint at ¶ 53.

As shown above, it is clear that OHM's first and third claims rest on the same facts, and arise out of the same alleged breach by HESI, the failure to re-estimate costs. As already shown by the Court, *Sabo* is not directly applicable to the present inquiry. Under the guidelines expressed in *Schudroff,* the Court finds that the fraud claim is not premised on a separate duty outside the contract. On that basis, the Court will grant GM's motion, and dismiss the complaint to the extent stated herein.

■ The Court notes that even if it had proceeded to analyze the Complaint under a strict *Sabo* analysis, the result would have been the same. The representation that at some future time HESI would re-estimate costs based on as yet unfinished documents is clearly a "promissory statement [ ] as to what will be done in the future," *Stewart v. Jackson & Nash,* 976 F.2d 86, 89 (2d Cir. 1992), *quoting Sabo,* 3 N.Y.2d at 160, 164 N.Y.S.2d at 716, 143 N.E.2d at 908, as it does not affirmatively misstate a present fact. In *Stewart,* the Circuit found actionable for fraud the affirmative statement that a particular client existed, and that a law firm was presently establishing a particular department, in an effort to lure a lateral hire. *Id.* The *Stewart* Court also found actionable for fraud the allegation that the law firm promised that the lateral hire would be made head of the department, but never intended to keep that promise. *Id.* At first glance, this third point would seem to support OHM's argument. However, the *Stewart* Court had first determined that the promises made in relation to the fraud claim, constituting a wrongful inducement to join the defendant law firm, occurred well before, and thus were unrelated to, the breach of contract claim premised on a wrongful termination. *Id.* at 88; *see also Deerfield Communications*

*Corp. v. Chesebrough–Ponds, Inc.,* 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003, 1004–05 (1986) (agreement giving rise to fraud claim separate and distinct from contract giving rise to breach of contract claim). Thus, even under a *Sabo* analysis, this Court would conclude that OHM has failed to plead a viable fraud claim, as no such distinction is shown herein.

Finally, as to the fraud claim, the Court will address the *Bibeau* case cited by the plaintiff. In *Bibeau,* the New York Appellate Division, Third Department stated the rule that a fraud claim can be maintained simultaneously with a breach of contract claim. 193 A.D.2d at 876, 596 N.Y.S.2d at 950. In permitting the plaintiff to move forward, the Court explained that the allegations in the Complaint "must rise to the level of material misrepresentations of present facts or promises made with a present, albeit undisclosed, intent not to perform them." *Id., citing Deerfield, supra.* However, a close reading of *Bibeau* reveals that it does not support permitting both claims to move forward in this case.

■ In *Bibeau,* the fraud claim was based on allegations that the defendant "would select horses suitable to be trained for competitive jumping." *Id.* The plaintiff also alleged that the defendant "had no intent of doing so but rather intended to obtain horses suitable to leasing to others and to derive a profit therefrom without plaintiff's knowledge and at his expense." *Id.* The breach of contract claim was premised on allegations that the defendant "had breached his contractual obligations by mistreating the horses and supplying them with improper medical care," and by improperly leasing the horses. 193 A.D.2d at 876, 596 N.Y.S.2d at 949. Insofar as the fraud claim and the breach of contract claim overlap, *Bibeau* would seem to support the plaintiff's position. However, although citing to *Deerfield,* the Court did not analyze *Deerfield,* or address the factual underpinning of the case. As stated above, the agreement in *Deerfield* giving rise to the fraud claim was a separate and distinct agreement from the contract giving rise to breach of contract claim. 68 N.Y.2d at 956, 510 N.Y.S.2d at 89, 502 N.E.2d at 1004–05. This

Court finds the *Deerfield* distinction to be vital to a determination of whether a claim for fraud in the inducement should go forward. If there is no allegation of an agreement, separate and distinct from the contract giving rise to the claim for breach, then a claim for fraud can be bootstrapped to any claim for breach merely by alleging that the defendant did not intend to perform from inception. The Court cannot believe this is the intent of *Deerfield* or *Sabo.* The Court finds that the analysis in *Bibeau* is incomplete, and thus, *Bibeau* is suspect authority for the plaintiff's position.

### D. Dismissal of Fourth Claim

OHM alleges as its fourth claim, breach of the covenant of good faith and fair dealing. OHM specifically alleges that HESI "has breached the covenant of good faith and fair dealing implied in the Contract (at issue herein) by, *inter alia* (sic), fraudulently refusing to accept or acknowledge increased estimation costs submitted by OHM.

GM argues that OHM has not stated a viable claim in that New York does not recognize a simultaneous claim for breach of the covenant of good faith and fair dealing with a breach of contract claim.

■ As a general rule, "[t]he cause of action alleging a breach of good faith is duplicative of a cause of action alleging breach of contract, since every contract contains an implied covenant of good faith and fair dealing." *Apfel v. Prudential–Bache Securities Inc.,* 183 A.D.2d 439, 439, 583 N.Y.S.2d 386, 387 (1st Dep't 1992), *modified on other grounds* 81 N.Y.2d 470, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (1993), *citing Gross v. Neuman,* 53 A.D.2d 2, 5, 385 N.Y.S.2d 46 (1st Dep't 1976); *Jaffe v. Paramount Communications Inc.,* 222 A.D.2d 17, 22, 644 N.Y.S.2d 43, 47 (1st Dep't 1996). "Implicit in that obligation is that no party will do anything to destroy or injure the right of another party under the contract. The covenant of good faith and fair dealing precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Smith v. Brown & Jones,* 167 Misc.2d 12, 19, 633 N.Y.S.2d 436, 441 (Sup.Ct.New York County 1995), *citing Birnbaum v. Birnbaum,* 73

N.Y.2d 461, 466, 541 N.Y.S.2d 746, 539 N.E.2d 574 (1989); *Wilf v. Halpern,* 194 A.D.2d 508, 599 N.Y.S.2d 579 (1st Dept.1993). The question before this Court is whether a claim for an alleged breach of the covenant of good faith and fair dealing can be pleaded as a separate and distinct claim, or whether it is merely redundant of the breach of contract claim.

As stated in *Canstar v. J.A. Jones Const. Co.,* a separately pleaded claim for breach of a covenant of good faith and fair dealing "is redundant since a breach of an implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from a breach of the contract." 212 A.D.2d 452, 453, 622 N.Y.S.2d 730, 731 (1st Dep't 1995). The Second Circuit has iterated this rule. *See, e.g., Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1992) ("parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" *Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991)).

■ As stated previously herein, OHM's first claim is for breach of contract. One way in which OHM alleges that HESI breach the contract is by "refusing, without justification, to recognize the contractual right of OHM to re-estimate the estimated cost set out at Section 4.1.2 of the Contract when final desin documents were complete." Complaint at ¶ 43. OHM's Fourth claim stems from the same facts. OHM alleges that the failure to accept or acknowledge increased estimated costs breach the covenant of good faith and fair dealing. Complaint at ¶ 57. Thus, not only does the plaintiff's fourth claim arise from the same facts as the breach of contract claim, but the damages flowing from each alleged breach would be the same. *See Geler,* 770 F.Supp. at 215; *Canstar,* 212 A.D.2d at 453, 622 N.Y.S.2d at 731.

Based on the reasons stated above, GM's motion to dismiss the plaintiff's fourth claim is granted.

### III. CONCLUSION

For the reasons just stated, the Court hereby grants GM's motion to consolidate, and further, grants GM's motions to dismiss OHM's third and fourth claims as against all parties.

IT IS SO ORDERED.