**TOWN OF HAVERSTRAW, Plaintiff,**

v.

**COLUMBIA ELECTRIC CORPORATION and HAVERSTRAW BAY, LLC, Defendants.**

No. 00 CIV. 8638(WCC).

United States District Court, S.D. New York.

Dec. 4, 2002.

---

Shebitz Berman & Cohen, P.C., Attorneys for Plaintiff, New York, Frederick J. Berman, Esq., George Shebitz, Esq., Matthew J. Delforte, Esq., Of Counsel.

Crane, Greene & Parente, Attorneys for Defendants, Albany, David M. Cherubin, Esq., Peter A. Lauricella, Esq., Of Counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Town of Haverstraw (the "Town") brings this action against defendants Columbia Electric Corporation and Haverstraw Bay, LLC (collectively "Columbia") alleging, *inter alia*, breach of contract and fraud, and seeking punitive damages on the fraud claim. Columbia now brings this motion to dismiss the fraud claim and the Town's prayer for punitive damages, pursuant to FED. R. CIV. P. 12(b)(6). For the reasons stated below, Columbia's motion is granted.

### BACKGROUND

The following statement of facts is based on the allegations in plaintiff's Amended Complaint, which, for the purposes of this motion, we assume to be true.[1] The Town is the owner and operator of a municipal sanitary landfill located in West Haverstraw, New York. (Am.Complt.¶ 8.) The Town was subject to an Order on Consent in connection with another lawsuit in which it was required to implement a plan for the closure of the sanitary landfill in conformity with the requirements of the New York State Department of Environmental Conservation ("DEC"). (*Id.* ¶ 9.) The Town had already submitted plans for the closure of the landfill to the court and hired a construction company to finish the construction work when Columbia advised the Town of its interest in developing, building and operating a combined cycle electric generating plant facility ("Power Plant") on the western portion of the landfill. (*Id.* ¶¶ 10–12.) This new project called for modifications of the plan for closure of the landfill that had, by that time, been approved by the court and the DEC. (*Id.* ¶ 13.)

---

1. On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on* *other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

Columbia and the Town entered into a Letter of Intent ("LOI") which set in place procedures regarding further investigation by the parties of the feasibility of Columbia's project. (*Id.* ¶ 15.) One particular provision stated that Columbia would reimburse the Town on a monthly basis for all reasonable third-party (i.e., out-of-pocket) costs incurred by the Town in performance of its responsibilities under the LOI in accordance with the attached budget. (*Id.* ¶ 15.) This budget covered the costs of engineering, permitting and legal expenses up to $150,000 (*id.*, Ex. C) and expired June 1, 2000. (*Id.* ¶ 17.)

After the LOI was executed, the Town began creating an 8.167–acre subdivided parcel on the landfill property for Columbia in addition to working with Columbia to develop a plan for modification of the closure plan that would accommodate the Power Plant and conform to DEC requirements. (*Id.* ¶¶ 18–19.) From the beginning, and included in the LOI, the parties agreed that, subject to approval, Columbia would pay the additional costs of the modification of the closure plan once they were approved. (*Id.* ¶ 20, Ex. D.)

Around February 2000, Columbia pressed the Town to complete the engineering of the modified landfill closure plan so that implementation of the plan could commence. (*Id.* ¶ 21.) At a meeting on February 8, 2000, attorneys for the Town asked what would happen if Columbia decided to back out of the project. Robert Svendsen, Project Manager for Columbia, replied that Columbia would pay for the costs incurred in developing and implementing the modified closure plan. (*Id.* ¶ 22.) By April of 2000, the DEC approved the modified plan and Columbia pressed the Town to begin construction, which it did at the end of April. (*Id.* ¶ 25.) At a Town meeting on April 24, 2000, a resolution formally authorized payment of the change order for the construction and

it was stated that Columbia would pay for these modification costs. (*Id.* ¶¶ 26–27.) On May 12, 2000, the parties held a final negotiating meeting and agreed that Columbia would pay all costs associated with the modification, totaling $2,344,142.62. (*Id.* ¶ 29.)

The construction, which began at the end of April, proceeded. (*Id.* ¶ 32.) A letter from Columbia dated June 15, 2000 informed the Town that it did not authorize work to proceed and that the Town was proceeding at its own risk. Another letter from Columbia dated June 30, 2000 informed the Town that Columbia might not proceed with the project. However by then, the Town could not stop work as it would cost too much to go back to the original plan or make a new plan. (*Id.* ¶¶ 34–35.) Since June 15, 2000, Columbia has not actively participated in the project and has refused to reimburse the $2,344,142.62 that the Town spent modifying the closure plan.

## DISCUSSION

### I. *Standard on Motion to Dismiss*

As previously noted, on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See* cases cited, *supra* note 1. On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as

factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978).

## II. *Fraud*

▮▮▮▮ It is well settled under New York law that a claim for fraud predicated on a breach of contract cannot be asserted simply because a party did not intend to honor its express contractual agreement. *John Paul Mitchell Sys. v. Quality King Distrib. Inc.*, No. 99 Civ. 9905, 2001 WL 910405, at *4 (S.D.N.Y. Aug. 13, 2001); *Four Finger Art Factory, Inc. v. Dinicola*, No. 99 Civ. 1259, 2000 WL 145466, at *4 (S.D.N.Y. Feb. 9, 2000); *First Bank of the Americas v. Motor Car Funding Inc.*, 257 A.D.2d 287, 690 N.Y.S.2d 17, 21 (1999) ("A fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, *i.e.*, when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract."). However, a false statement of intention is sufficient to support an action for fraud, even if that false statement relates to a contractual agreement. *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.S.2d 112, 122, 629 N.Y.S.2d 1009, 653 N.E.2d 1179 (1995). These seemingly inconsistent legal principles were reconciled by the Second Circuit Court of Appeals which stated that to maintain a fraud claim arising out of a breach of contract, the plaintiff must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc., v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir.1996). Chief Judge Winter rationalized that the Appellate Division cases state the general principle of law (that fraud claims cannot be maintained simply because a party did not intend to honor the agreement), while the individual Court of Appeals' decisions apparently to the contrary should be read as fact-specific exceptions. *Cougar Audio, Inc., v. Reich*, No. 99 Civ. 4498, 2000 WL 420546, at *6 n. 4 (S.D.N.Y. April 18, 2000).

The Town alleges that Columbia misrepresented that it would pay for all additional costs associated with the modified closure plan. The damages caused by this misrepresentation are apparently identical to the damages caused by the alleged breach of contract: the $2,344,142.62 in which the Town expended in altering the construction plans and in the construction itself. Thus, the fraud claim is based on an alleged false promise to perform the contract obligations; this claim cannot survive unless it fits into one of the three exceptions stated in *Bridgestone/Firestone, Atla–Medine v. Crompton Corp.*, No. 00 Civ. 5901, 2001 WL 170666, at *3 (S.D.N.Y. Feb. 21, 2001).

The Town argues that the statements made by Columbia reassuring them that all extra costs associated with the development and implementation of the modified closure plan were separate and independent from its breach of contract because it induced the Town to begin performance and irrevocably commit itself to the modified closure plan without an executed site development agreement in place. The Town concludes by stating that the specific

misrepresentation of Columbia's intention to pay the extra costs was separate from its breach of the alleged agreement to pay such expenses. The statement on which the Town bases its fraud claim is the exact statement that the Town claims created the contract or at least a supplement to the original agreement. Even though the breach of contract claim and the fraud claim are pleaded in the alternative, it does not follow that the fraud claim is collateral to the alleged breach of contract. *Atla-Medine v. Crompton Corp.*, No. 00 Civ. 5901, 2001 WL 428249, at \*1 (S.D.N.Y. April 26, 2001) ("... the alternative pleadings rule does not permit a plaintiff to treat fraud and contract as interchangeable claims, and whether a plaintiff asserts contract claims is immaterial since the fraud claim must stand on its own.").

In support of its argument, the Town cites numerous cases that allowed oral misrepresentations made outside a contract to sound in fraud. However, the Town's reliance is misplaced as those cases dealt with dissimilar facts. *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986); *Munn v. Marine Midland Bank, N.A.*, 960 F.Supp. 632, 643 (W.D.N.Y.1996). For example, fraud claims have been permitted where they are based on a misrepresentation that induced the other party to enter into the contract. *Cougar Audio*, 2000 WL 420546, at \*6 (distinguishing *Deerfield Communications* because the plaintiff in *Cougar Audio* did not allege that defendant's statements induced plaintiff to enter into a contract); *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (citing examples of conduct sufficiently collateral to state a claim in tort including fraudulently inducing the plaintiff to enter into the contract and engaging in conduct to defeat the contract, but noting that when a party is simply trying to enforce its bargain, a tort claim will not lie).

Here, the Town does not contend that they were induced to enter into a contract based on extraneous misrepresentations, but instead that in reliance on Columbia's performance of its contractual obligations, they were induced to change plans, begin construction and incur great costs. In a recent case, the Southern District of New York discussed a similar instance where the plaintiff did not allege that the statements induced plaintiff to enter into a contract, but instead induced plaintiff to introduce defendant to clients and precluded them from procuring an alternate source of funding. *Atla-Medine*, 2001 WL 170666, at \*3. The court rejected the argument, stating that the claim sounded in contract, not fraud, as the introduction to clients was "part and parcel" of its obligation under the alleged contract. *Id.* Similarly, in the present case, changing plans and beginning construction was "part and parcel" of the alleged contract.

The *Graubard* case, cited by the Town, does seem to break with the rule that there is no fraud where a plaintiff alleges merely that the defendant never intended to perform. The court explained this break by pointing to subsequent Court of Appeals decisions reaffirming the general rule, but placing it in the context of inducing plaintiff to enter into a contract. *Ray Larsen Associates, Inc. v. Nikko Am., Inc.*, No. 89 Civ. 2809, 1996 WL 442799, at \*4 (S.D.N.Y. Aug. 6, 1996) (distinguishing *Graubard* because plaintiffs alleged no misrepresentation by defendant that induced plaintiff to enter into agreement).

Other cases relied on by the Town are similarly unavailing as they did not involve complaints with breach of contract claims. *Channel Master Corp. v. Aluminium Ltd. Sales*, 4 N.Y.2d 403, 409, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958); *Sabo v. Delman*, 3

N.Y.2d 155, 159, 164 N.Y.S.2d 714, 143 N.E.2d 906 (1957) ("Before discussing the relevant law, it is well to bear in mind that the complaint before us neither asserts a breach of contract nor attempts to enforce any promise made by defendants."). In fact, the Northern District of New York Court specifically distinguished *Sabo* on the basis that *Sabo* did not deal with simultaneous claims for breach of contract and fraud. *OHM Remediation Servs. Corp. v. Hughes Envtl. Sys. Inc.*, 952 F.Supp. 120, 123 (N.D.N.Y.1997). The court went on to explain that the fraud claim could be maintained simultaneously with the breach of contract claim if the fraud claim was based on an agreement not integrated into the contract at issue, such as a *collateral* oral agreement. *Id.* (emphasis added). *Papa's–June Music, Inc. v. McLean*, 921 F.Supp. 1154, 1162 (S.D.N.Y.1996) ("Because the only fraud alleged arises out of the same facts that serve as the basis for the breach of contract claim, [plaintiff] has failed to state a claim for fraud on which relief can be granted."). Here, the Town did not plead that a fraud claim is collateral to the breach of contract claim. Consequently, there is no cognizable tort claim.[2]

### III. *Punitive Damages*

The New York Court of Appeals has recognized that,

> punitive damages have been allowed in cases where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future . . .

*Walker v. Sheldon*, 10 N.Y.2d 401, 404, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961). The *Walker* court stated that to warrant punitive damages in fraud and deceit actions, a defendant must exhibit fraud evincing a "high degree of moral turpitude," and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations." *Id.* at 405, 223 N.Y.S.2d 488, 179 N.E.2d 497. The Court of Appeals went further and established a two-part test to determine the propriety of awarding punitive damages in a claim arising from a breach of contract case: 1) the conduct constituting, accompanying, or associated with the breach of contract must be actionable as an independent tort for which compensatory damages are ordinarily available; and 2) the conduct must be sufficiently egregious under the *Walker* standard, i.e., egregious tortuous conduct aimed at the public in general, to warrant the additional imposition of exemplary damages. *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994); *N.Y. Univ.*, 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763; *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F.Supp. 285, 292 (S.D.N.Y.1995) (Conner, J.).

Because the Court has found that no independent tort claim exists, there is no legal basis for awarding the Town punitive damages. The motion to dismiss the punitive damages claim is granted.

### CONCLUSION

For the above stated reasons, the motion of defendants Columbia Electric Corporation and Haverstraw Bay, LLC to dismiss the Town of Haverstraw's fourth count of fraud pursuant to FED. R. CIV. P. 12(b)(6) as well as the prayer for punitive damages is granted in its entirety. Defen-

---

2. The Town requested permission in its Memorandum of Law leave to replead the fraud claim if the Court dismissed it. Finding no way for the Town to plead fraud based on the facts as we know them, the Court denies leave to replead.

dants' request for reasonable attorney's fees and costs are denied.

SO ORDERED.