FREEPLAY MUSIC, INC., Plaintiff,

v.

COX RADIO, INC., Cumulus Media, Inc., Entercom Communications Corp., Beasley Broadcast Group, Inc., Citadel Broadcasting Corp., and Viacom Inc., Defendants.

No. 04 Civ. 5238GEL.

United States District Court, S.D. New York.

June 23, 2005.

Gabriel Fischbarg, Toptani Law Offices, New York, NY, for Plaintiff.

Bruce P. Keller, Debevoise & Plimpton LLP, New York, NY, for Defendants Beasley Broadcast Group, Inc., Entercom Communications Corp., and Citadel Broadcasting Corporation.

Frederic S. Newman, Edward P. Boyle, Hoguet Newman & Regal, LLP, New York, NY, for Defendant Cox Radio, Inc.

Robert Penchina, Levine Sullivan Koch & Schultz, LLP, New York, NY, for Defendant Viacom Inc.

Steven I. Weisburd, Abbey Green, Dickstein Shapiro Morin & Oshinsky LLP, New York, NY, for Defendant Cumulus Media, Inc.

## OPINION AND ORDER

LYNCH, District Judge.

Freeplay Music, Inc. ("Freeplay"), the owner of copyrights in certain musical compositions and sound recordings, brings this action against defendants, corporate owners of radio stations (collectively, "Broadcasters"), alleging violations of copyright and related claims. In a separate opinion issued this day, the Court grants the motion to dismiss for lack of personal jurisdiction by one defendant, Beasley Broadcast Group, Inc. This opinion addresses a motion by all defendants to dismiss for failure to state a claim. That motion will be granted in part and denied in part.

## DISCUSSION

### I. *Copyright*

The complaint in this case is a bare-bones document that contains little factual information. Essentially, it simply alleges that the defendant Broadcasters, "produced, exploited and distributed in interstate commerce certain radio programming containing certain of the Compositions and the Sound Recordings" copyrighted by Freeplay. (Compl. ¶ 17.) On this basis, Freeplay asserts two separate causes of action alleging that defendant Broadcasters have infringed its copyrights, respectively in its sound recordings and in its musical compositions.

While such a complaint may, in the abstract, satisfy the notice pleading standards of the Federal Rules of Civil Procedure, the briefing of defendants' motion to dismiss reveals that the complaint in this case is not really a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Instead, the complaint is artfully worded to avoid stating plaintiff's actual claim.

■ A naive reader of the complaint might naturally assume that Freeplay is charging the Broadcasters with broadcasting Freeplay's copyrighted sound recordings and compositions over the radio as part of their regular programming. As the Broadcasters point out in their motion, this would not state a viable claim. (*See* D. Mem. 2–6.) Regarding sound recordings, the Copyright Act expressly excludes public performance rights of music from protection. Section 114(a) states that "[t]he exclusive rights of the owner of the copyright in a sound recording ... do not include any right of performance under Section 106(4)." 17 U.S.C. § 114(a). While the copyright holder has a right of performance by means of a digital audio transmission, nonsubscription broadcast transmissions, which traditionally includes radio broadcasts, are not included in this right. 17 U.S.C. § 114(d). *See Bonneville Int'l Corp. v. Peters*, 347 F.3d 485, 488 (3d Cir.2003) ("The paradigmmatic 'nonsubscription broadcast transmission' was a traditional over-the-air radio broadcast.").

■ A copyright in the underlying musical compositions *does* provide a performance right, but the Broadcasters assert that they have licensed the right to perform plaintiff's compositions over the radio from its agent, Broadcast Music Inc. ("BMI"). (*See* D. Mem. 6.) In opposing the motion, plaintiff huffs a bit that the Broadcasters have improperly asked the Court to consider, on a motion to dismiss, factual material (*i.e.*, the BMI licenses) outside the four corners of the complaint. In fact, however, Freeplay does not dispute that these licenses exist. Instead, Freeplay's primary response to the motion is that the complaint intends to charge a quite different violation, which it contends would not be covered by the licenses.

Freeplay asserts that "[d]efendants are fully aware ... [from] correspondence between the parties" (P. Mem.3) (although the Court would have no way of gleaning from Freeplay's complaint) that the real dispute between the parties involves a different legal theory entirely.

According to Freeplay, the complaint really means to allege that the Broadcasters have violated its "synchronization rights." (*Id.*) By alleging, in the language quoted above, that the Broadcasters had "produced ... programming *containing*" plaintiff's compositions, Freeplay apparently means to complain of "defendants' illegal synchronization of plaintiff's musical works with other works." (*Id.* at 4, quoting Compl. ¶ 17; emphasis in original.)

■ As the Second Circuit has described it, "the so-called synchronization right, or 'synch' right [is] the right to reproduce the music onto the soundtrack of a film or a videotape in synchronization with the action. The 'synch' right is a form of the reproduction right also created by statute as one of the exclusive rights enjoyed by the copyright owner." *Buffalo Broadcasting Co., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 920 (2d Cir.1984). The Court went on to note, "When [a] producer wishes to use outside music in a film or videotape program, it must obtain from the copyright proprietor the 'synch' right in order to record the music on the soundtrack of the film or tape." *Id.* at 921. Such a license is necessary because "incorporating a copyrighted sound recording into the soundtrack of a taped commercial television production infringes the copyright owner's exclusive right of reproduction." *Agee v. Paramount Communications, Inc.*, 59 F.3d 317, 319 (2d Cir.1995).[1]

1. Based on this language, and similar language in other Second Circuit synchroniza-   tion right cases, the Broadcasters argue in a footnote that synchronization rights involve

The Court of Appeals also explained in *Agee*, however, that while a producer of television programs violated a copyright owner's rights by using his sound recordings to make an audio track for a segment of a television program, the television *stations* that broadcast the producer's infringing works were not liable in copyright. *Id.* at 326–27. Since *Agee* did not hold copyrights in the underlying musical compositions, *id.* at 319, the Court had no occasion to address the liability of the broadcasters to the holder of such copyrights.

As reformulated in its brief, Freeplay claims that "the wrongdoing at issue in this case relates to defendants' illegal synchronization of plaintiff's musical works with other works in violation of plaintiff's copyrights." (P. Mem.3.) Even the reformulated allegation is strikingly vague, and leaves considerable doubt about what the defendants are actually accused of doing. In their reply brief, the Broadcasters argue that Freeplay "has alleged only that Defendants *broadcast* 'radio programming containing' its sound recordings and musical compositions." (D. Reply 2; emphasis in original.) Based on this premise, the Broadcasters then rely on *Agee* for the proposition that they cannot be held liable

for merely *broadcasting* infringing synchronized material. (*Id.* at 3.) Nevertheless, the Broadcaster's argument conveniently overlooks the claim in Freeplay's brief that defendants themselves "synchroniz[ed] ... plaintiff's musical works with other works" (P. Mem.3), and, more importantly, the allegation in the complaint that defendants *"produced ...* radio programming containing" the copyrighted works. (Compl. ¶ 17; emphasis added.) Divorced from the synchronization issue, this language might naturally be read as suggesting that the Broadcasters produced radio shows ("programming") on which the plaintiff's recordings were played. Once the synchronization issue is highlighted, though, the same language can easily be read as alleging that the Broadcasters themselves *created* commercials or jingles that synchronized the plaintiff's material with other works.

Freeplay's brief is of little help in deciphering its allegations. Freeplay asserts that its compositions are instrumental music "typically synchronized with other sounds such as a vocal track to create promotions, programming or commercials." (P. Mem.5–6.) Freeplay thus contends that the Broadcasters' BMI licenses do not cover "compositions of the musical

---

"the process of combining sound recordings of musical compositions with visual images," *Bridgeport Music, Inc. v. Still N the Water Publishing,* 327 F.3d 472, 481 n. 8 (6th Cir. 2003), and therefore are, by definition, irrelevant to radio programs. (D. Reply 4.n.2.) Neither plaintiff nor defendants cite any case expressly addressing the applicability of synchronization rights to radio programming. *Bridgeport Music,* however, does cite a treatise indicating that a synchronization license must be obtained for the use of a composition in a "film, pre-recorded radio or television program, or radio or television commercial." *Id.,* citing 2 Lindey on Entertainment, Publishing and the Arts § 8:1 (2d ed.2000). At any rate, as noted above, the "synchronization right" is not a separate statutorily-de-

fined right. Rather, "[a] synchronization of previously recorded sounds onto the soundtrack of an audiovisual work is simply an example of the reproduction right explicitly granted by section 114(b) to the owner of rights in a sound recording." *Agee,* 59 F.3d at 322. The Broadcasters suggest no reason why the "synchronization of previously recorded sounds" with other recorded sounds to create a commercial for radio rather than for television use would not be just another example of the reproduction right, similar to a "sample." *See Bridgeport Music, Inc. v. Dimension Films,* 410 F.3d 792, 800–01 (6th Cir.2005) (holding that a sound recording owner has the exclusive right to "sample" his own recording).

works comprising the illegally synchronized commercials played by defendants' radio stations," since the commercials are different (infringing) works from those covered by the licenses. (*Id.* at 6.) The Broadcasters reply that Freeplay's argument is unpersuasive because Freeplay has not alleged in its complaint that the materials broadcast are different from those licensed.

■ While the complaint leaves much to the imagination, it cannot be dismissed at this stage. A complaint may not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond a doubt that plaintiff can prove no set of facts that support his claim which would entitle him to relief." *Haverstraw v. Columbia Elec. Corp.*, 237 F.Supp.2d 452, 454 (S.D.N.Y.2002). At a minimum, Freeplay's complaint can be construed as asserting that the Broadcasters did not merely broadcast programming supplied by an outside producer that violated its synchronization rights, but actually produced infringing materials themselves, an accusation that would state a claim for violation of copyright under *Agee.* After discovery, on a full factual record, it will be easier to determine whether any actions of the Broadcasters in fact transgressed plaintiff's rights. For now, it is sufficient that Freeplay's complaint adequately alleges that the Broadcasters have violated its copyrights.

## II. *Other Claims*

Freeplay's other claims fare less well. Freeplay asserts causes of action for unfair competition under the Lanham Act and under New York state law, as well as for common law unjust enrichment. None of these claims can survive a motion to dismiss.

■ The federal unfair competition claim is predicated on false designation of origin (Compl.¶¶ 30–34), and plaintiff acknowledges that its claims under New York law are "virtually the same." (P. Mem.9.) However, the Supreme Court has held that the Lanham Act protects only "the producer of … tangible goods that are offered for sale, and not … the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003). The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition. *Id.* at 33, 123 S.Ct. 2041. The failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright. *Carroll v. Kahn,* No. 03–CV–0656, 2003 WL 22327299, at *5 (N.D.N.Y. Oct.9, 2003). *See also Smith v. New Line Cinema,* 03 Civ. 5274(DC), 2004 WL 2049232, at *10–*11 (S.D.N.Y. Sept. 13, 2004) (holding that failure to credit author of screenplay not actionable under the Lanham Act); *Boston Int'l Music, Inc. v. Austin,* Civ. A. 02–12148–GAO, 2003 WL 22119228, at *2 (D.Mass. Sept.12, 2003) (unauthorized reproduction and performance of music and sound recordings did not state a claim under the Lanham Act "because the plaintiffs' claims were sufficiently covered by the law of copyright").

Freeplay argues that a Lanham Act unfair competition claim "can exist in addition to copyright infringement claims as long as the non-copyright claims allege certain wrongdoing beyond the wrongdoings related to copyright infringement." (P. Mem.8.) In this case, however, Freeplay alleges no such additional or separate wrongdoing. To the extent that the complaint alleges anything resembling a fact at all, Freeplay's unfair competition claims are based on the very acts of producing and broadcasting allegedly infringing works that form the factual underpinning

of its copyright claims. Therefore, Freeplay's Lanham Act claims fail as a matter of law.

 The same principle dooms Freeplay's state law claims, whether of unfair competition or of unjust enrichment. "[S]tate law claims that are substantively redundant of Copyright Act claims are preempted.... A state law claim with an 'extra element' beyond mere reproduction, preparation of derivative works, distribution, performance or display, that changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim, survives preemption." *Sharp v. Patterson*, No. 03 Civ. 8772(GEL), 2004 WL 2480426, *1 (S.D.N.Y. Nov.3, 2004), quoting *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604(CSH), 2004 WL 1781009, at *16 (S.D.N.Y. Aug.10, 2004) (internal quotation marks omitted). Because Freeplay has failed to allege any "extra element" beyond simply the same charge that the defendants "produced, exploited and distributed in interstate commerce certain radio programming containing certain of [plaintiff's copyrighted] Compositions and ... Sound Recordings" (Compl.¶ 17) that forms the basis of its copyright claims, its state law causes of action are pre-empted by the Copyright Act and must be dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint for failure to state a claim is granted with respect to the third, fourth and fifth claims for unfair competition in violation of the Lanham Act, common law unfair competition, and unjust enrichment (and the sixth claim, for injunctive relief, insofar as it is predicated on those claims), and denied with respect to the first and second causes of action for copyright infringement (and the sixth claim, to the extent it is predicated on the copyright claims).

SO ORDERED.